THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ACE CHARLES HAWTHORNE, JR., Defendant-Appellant.

Second District   No. 77-168

Opinion filed June 5, 1978.

Ralph Ruebner and Allen L. Wiederer, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted of violating section 401(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(b)) by selling 0.88 gram of heroin to a police undercover agent; and was sentenced to a term of 2-6 years imprisonment. He appeals contending that various trial errors either individually or by their cumulative effect deprived him of a fair trial.

James Kizart, an undercover narcotics agent with the Illinois Bureau of Investigation (IBI), testified that he placed a telephone call to the defendant and discussed with him the purchase of a gram of heroin; that defendant answered "all right, cool"; and that the witness informed defendant that he would be over to defendant's apartment shortly in order to purchase this. He referred to the apartment as 1116 Irving Manor Apartments. He rang the door bell marked "Manager" which was apartment 16. After identifying himself as "Jimmy" into the speaker system the buzzer rang and the witness proceeded up to the top floor and knocked on a door which Mr. Hawthorne answered. The witness testified that he recognized the defendant from a previous encounter on November 18, 1975, and that after that he had identified the defendant from a photograph he saw in the Rockford IBI office. The witness further testified that after he entered the defendant's apartment he went with defendant into a bedroom where he agreed to buy the gram of heroin for $120; that he gave the defendant $120 in marked money and retired to the defendant's living room; that the living room was dark; two other men and two women were in the room; that while Kizart was sitting in the living room the door buzzer sounded; a woman, whom he knew as Linda, answered the buzzer and said, "Ace, Kiwi wants you"; that the defendant then went to the rear of the apartment with Kiwi and returned a short time later with a tinfoil packet containing a powdered substance which he handed to Kizart. Kizart then left the apartment and returned to his office where a field test proved positive for the presence of the drug.

Kizart testified he could not recall anything unusual about the defendant, could not recall how he was dressed or if he was wearing shoes; also, that no attempt was ever made to lift fingerprints from the tinfoil.

Another agent testified that he was outside defendant's apartment on the date in question for purpose of surveillance; that about 6:30 p.m. he observed Willie Keyes who was also called "Kiwi," enter the apartment complex but that he did not see the defendant that night. A Rockford policeman also testified that he observed Kizart enter the defendant's apartment at about 5:35 p.m. on the day in question. He also observed

Kiwi enter and leave the apartment at about this time but did not see the defendant on the night in question.

In the defendant's case the sale of the heroin in the apartment was admitted but the theory of the defense was that Greg Johnson, the defendant's supposed roommate at the time of the incident was the one who made the sale. It appeared that Johnson had since fled to California. The defendant testified that Johnson had been his roommate at 1116 Irving since March or April of 1975. However, on cross-examination the defendant suggested that Johnson had moved in in late August of 1975. Then the defendant said that in January of 1976 he was spending most of his time with his girl friend in Beloit, Wisconsin. He also testified that Kiwi and Greg Johnson were good friends, and further, that he had been told by several persons that Greg Johnson was trafficking in narcotics in the apartment in defendant's absence. Defendant described Johnson as being of the same height, weight and complexion as himself. Two witnesses testified in corroboration of defendant's alibi.

Defendant further testified that on January 8, 1976, Johnson telephoned him in Beloit and informed him that the police "had raided" their apartment in Rockford. Johnson thereafter sold the defendant's belongings and fled to California. The defendant, however, remained in the area but went into hiding and was captured three weeks later when he returned to work in Rockford.

In rebuttal the State sought to discredit the defendant's theory that his roommate Johnson had actually sold the heroin by offering first the testimony of a jailer at the Winnebago County jail who testified that on August 5, 1975, Johnson upon his reception into the jail had told the jailer that he was residing at 4030 South Henrietta Avenue (not 1116 Irving) in Rockford; and also by offering Johnson's jail record card prepared by the jailer which contained this information.

In surrebuttal the defendant testified that Johnson's mother resided at 4030 South Henrietta and that Johnson sometimes claimed that address as his own even after he had moved into defendant's apartment.

The defendant first contends that the prosecutor improperly argues his personal belief of defendant's guilt in an opening statement to the jury, in which he said:

"I believe, Ladies and Gentlemen, that when you have heard the testimony of these witnesses that this simple case will have been proven to you beyond a reasonable doubt.

I believe when you have heard the evidence you will believe as I believe that Ace Hawthorne on January the 6th, 1976, delivered to Agent Kizart an amount of heroin which places him in violation of the Illinois Controlled Substances Act. Thank you."

It is improper for a prosecutor to express his personal opinion or belief

as to a defendant's guilt except where he either states or it is apparent from the record that such an opinion is based solely on the evidence. *People v. Prim*, 53 Ill. 2d 62, 77 (1972); *People v. Fort*, 44 Ill. App. 3d 62, 67 (1976).

■■ We conclude that when the prosecutor's comments are read in context his statement is a suggested inference from the evidentiary facts the State expected to prove and does not constitute a statement of his personal belief apart from the competent evidence. See, *People v. Carroll*, 50 Ill. App. 3d 946, 951 (1977).

Defendant next contends that the court erred in allowing the jailer of the Winnebago County jail to testify as to what Greg Johnson told him upon Johnson's reception into the county jail on August 5, 1975 and erred in permitting the jail record card to be admitted.

■■ Section 7 of "An Act to revise the law in relation to jails and jailers" (Ill. Rev. Stat. 1977, ch. 75, par. 7) requires the warden of each county jail to keep a record of persons committed to the jail, including "their places of abode, if known." Records kept pursuant to this statute are public records which are excepted from the hearsay rules. (*People v. Jackson*, 41 Ill. 2d 102, 114 (1968).) The public record is admissible to the extent the public official, here the jailer, could testify in person. (*Lombard Park District v. Chicago Title & Trust Co.*, 105 Ill. App. 2d 371, 379 (1969).) As applicable here the public record based on the statement made by Greg Johnson to the jailer is admissible to prove that Johnson told the jailer where his address was on August 5, 1975, but not to prove the truth of that statement. (McCormick, *Evidence* §310, at 725-27 (2d ed. 1972). See also *Felice v. Long Island R.R. Co.*, 426 F. 2d 192, 196-97 (2d Cir. 1970); *Yates v. Bair Transport, Inc.*, 249 F. Supp. 681, 687-88 (S.D.N.Y. 1965). And see Fed. R. Evid. 805; 28 U.S.C.A. Notes of Advisory Committee on Proposed Rules (1975).) Thus it was error for the trial court to admit the jail record and the testimony for the purpose of showing that Greg Johnson lived at a certain address as of August 5, 1975. However, the effect of this error was substantially cured by defendant's testimony on surrebuttal that the address, 4030 South Henrietta, was the address of Greg's mother. On the whole record we conclude that the error was harmless beyond a reasonable doubt.

■■ Defendant also claims that the court erred in admitting into evidence a mug shot of the defendant taken some two years before the defendant's arrest for the present crime. The mug shot bears the legend February 11, 1975, but the parties stipulated that the photograph was, in fact, taken on February 11, 1974. The heroin sale in question took place on January 6, 1976. It appears from the record, however, that the photograph was the one that Kizart used on November 18, 1975, to first identify the defendant. It was therefore probative of Kizart's ability to identify defendant and

admissible on that basis. Photographs which are not received in evidence for the purpose of showing an arrest for another offense but to show how defendant was first identified by an eyewitness to the crime may be properly admitted. *People v. Maffioli*, 406 Ill. 315, 322 (1950); *People v. Denwiddie*, 50 Ill. App. 3d 184, 192-93 (1977).

Considering the entire record before us we conclude that the defendant was convicted of the offense charged beyond a reasonable doubt in a fair trial. We therefore affirm the judgment.

Affirmed.

RECHENMACHER and NASH, JJ., concur.